PER CURIAM.
This election contest was appealed to this court to consider the judgment of the trial court, which judgment was unfavorable to the petitioner. The trial court’s factual findings are substantially adopted as our own.
“Mr. Tulley Cloud filed this suit against the Allen Parish Democratic Executive Committee seeking to be declared one of the Democratic Party nominees for the office of Police Jury from Ward 5, Allen Parish. The second primary was held December 16, 1967 between candidates Tulley Cloud, Aubrey Millsap, Raymond Strother and Grover Willis, with two candidates to be elected. The single shot system was set so that every voter had to vote for two candidates or lose his vote.
“There was a malfunction in voting machine number 13536 which was one of three machines used at Precinct 3, of Ward 5, such that only three or four voters’ ballots were registered out of a possible 353 voters. * * * [As a result of the malfunction a total of only eight votes for police jury became registered on the machine.]
* * *
ccIn any event, voting machine number 13536 was used throughout the election without any further apparent difficulty and a total of 353 voters cast their votes on that machine. As noted above, only three or four voters’ ballots in the police jury election were counted on this machine.
“The total ballots recorded for the second primary in all precincts of Ward 5 insofar as the Police Jury race was concerned were * * * [promulgated] by the Allen Parish Democratic Committee exactly as they were recorded on the voting machines as follows:
Raymond Strother 1,344
Aubrey Millsay 1,344
Tulley Cloud 1,289
Grover Willis 1,272
Thus it appears that the losing two candidates trailed the winners by only 72 votes. The effect of the malfunction was to deprive 349 voters of their right to cast ballots for police jury.
“It was established from the evidence that the Committee simply * * * [promulgated] the election returns at its 4 p.m. December 20th meeting, and that they did not consciously make any selection from the candidates as they are now being required to do under LSA-RS 18:358 (E) provides:
‘There shall be no third primary. For any situation not especially provided for herein the committee calling the election shall provide for the selection of a nominee or nominees from the candidates.’
“Plaintiff’s counsel urges that this Court should decree that Mr. Tulley Cloud is one of the nominees by virtue of the fact that a projection of the percentage of votes cast in the other two machines used in Precinct 3 of Ward 5, when applied to the total of 349 votes wiped out by the malfunctioning machine, would result in the election of Mr. Cloud.
“No authority has been cited and this court knows of none which would allow the projection by this court using such a percentage multiplied by the number of unrecorded votes by the malfunctioning machine. Should the Committee see fit to use such a projection, there does not appear to be any legal objection to such action.”
Petitioner requested that the trial court do one of the following:
(1) Order the Democratic Executive Committee to certify him'and Raymond Strothér as the Democratic Nominees for -Police Jury, Ward 5, Allen Parish, Louisiana.
(2) Order a complete rerun election in Ward 5, Allen Parish in the entire Ward.
(3) Order a rerun election in Precinct 3, Ward 5, Allen Parish, limited to *162 the persons who voted in the primary-on December 16, 1967.
(4) Order a rerun election in Precinct 3, Ward 5, Allen Parish, to include all qualified voters in said Precinct.
(5) [Provide] [a]ny other relief as the Court may feel is justified under the circumstances.
The trial court refused to order the Democratic Executive Committee to undertake any specific action but did list five alternative things which it stated the Committee might do in order to solve the question of which two of the four candidates should be named to the police jury.
In the case of Collier v. Democratic Executive Committee, 245 La. 773, 161 So.2d 76, the majority of our Supreme Court held that where one voting machine in a particular precinct failed to register the votes cast for a particular office in a second primary, the Democratic Executive Committee had a duty to select from among those candidates who did not have a majority of votes, nominees necessary to fill the remaining offices. The court pointed out that the case was determined by R.S. 18:-358(E) (quoted above). The majority refused to permit the Democratic Executive Committee to call or order a recasting of votes in that precinct where the irregularities occurred, because they felt that any recasting of votes would constitute a third primary, which was specifically forbidden under the law. (It is on this point that three justices dissented with the ruling of the majority.)
 The instant case is also one which is not specially provided for under any provisions of Title XVIII of the Revised Statutes, and, therefore, we are bound under the Collier case to apply the law as set out by the majority opinion. Therefore, the relator in the instant case cannot have the Democratic Executive Committee ordered to recast any of the votes; rather, the affirmative duty of that Committee is to “select” from among those candidates who did not receive a majority vote,.the two who shall be deemed as nominees. The extent of any judgment or order which a court may make in a matter such as this is that the Committee must actually select the nominees. The mode of effecting this selection is a matter which lies in the discretion of the Democratic Executive Committee and is not generally subject to judicial review.[1]
It further appears that the certification of nominees to the Secretary of State by the Democratic Executive Committee constitutes a selection of nominees by that Committee. See Collier v. Democratic Executive Committee, supra.
It is, therefore, our opinion that it was within the discretion of the Democratic Executive Committee for the Parish of Allen, to name and certify the top two candidates out of the four who took part in the second primary as the Democratic nominees for police jury of that parish.
For these reasons we agree with the result reached by the trial court and affirm that judgment at appellant’s costs.
Affirmed.

. The- court in the Collier case did state that “ * * * there being no evidence from which a logical inference could be drawn to determine the proper allocation of the votes amongst the ten candidates who participated in the second primary, it became the mandatory duty of the Committee under the clear and unambiguous language of the Revised Statutes to certify in addition to the four candidates who received a clear majority therein, the fifth nominee from the two candidates who received the next highest number of votes, R.S. 18:358(E). * * *»
This might be some indication that the Supreme Court would be inclined to hold that the discretion vested in the Democratic Executive Committee to select a nominee in such a case as this is not unlimited.